LUIS FERNANDEZ *v.* COMMISSIONER OF CORRECTION
(AC 26221)

DiPentima, Gruendel and Dupont, Js.

Argued March 30—officially released June 27, 2006

*Todd A. Bussert,* special public defender, for the appellant (petitioner).

*Lisa A. Riggione,* senior assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky,* state's attorney, and *Elizabeth Bodine,* former assistant state's attorney, for the appellee (respondent).

*Opinion*

DUPONT, J. The petitioner, Luis Fernandez, appeals following the habeas court's denial of his petition for certification to appeal from the judgment denying his petition for a writ of habeas corpus. The petition was comprised of two claims, either or both of which, he argues, required the relief of a withdrawal of his guilty plea. The petitioner first claims that he received ineffective assistance of counsel in connection with his plea of guilty. The petitioner's second claim challenges the validity of his plea, claiming error by the trial court. In support of this claim, the petitioner raises two subordinate claims. First, he argues that the trial court, by involving itself in his plea negotiations with the prosecution and by making inappropriate comments, coerced him to plead guilty, resulting in a constitutionally defective, involuntary plea. The petitioner also claims that the court's plea canvass was in violation of our rules of practice and the state and federal constitutions in that the canvass failed to establish that he made a knowing, voluntary and intelligent plea. The respondent, the commissioner of correction, affirmatively alleged that the petitioner's claims were in procedural default because, without good cause, he did not pursue his claims at sentencing or through a direct appeal. The petitioner raises an additional claim on appeal that the habeas court's standing order, barring posttrial briefs except in extraordinary circumstances, violated his due process rights. We dismiss the appeal.

The following factual and procedural history is relevant to our discussion of the issues on appeal. The petitioner originally was charged with one count of

assault in the second degree in violation of General Statutes § 53a-60 and one count of failure to comply with a fingerprint request in violation of General Statutes § 29-17. These charges related to an incident that occurred on October 13, 2001, at the MacDougall-Walker Reception/Special Management Unit involving another prisoner, Douglas Sawyer. At the time of the incident, the petitioner was incarcerated, serving a lengthy sentence for an unrelated, nonviolent drug offense.

On October 1, 2002, the petitioner entered a guilty plea to assault in the second degree under the *Alford*[1] doctrine and was sentenced to one year to serve concurrently with his existing sentence.[2] On June 4, 2003, the petitioner filed a petition for a writ of habeas corpus, which was later amended, claiming that he had received ineffective assistance of counsel and that his plea was not knowing, voluntary and intelligent. On October 21, 2004, the habeas court conducted a hearing on the petition and ruled orally, denying the petition. On December 17, 2004, the court denied certification to appeal. This appeal followed. Additional facts will be set forth as necessary.

As a preliminary matter, we identify the relevant legal principles and the applicable standard of review that guide our resolution of the petitioner's appeal. The denial of a petition for certification to appeal is

---

[1] *North Carolina* v. *Alford*, 400 U.S. 25, 35, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[2] The prosecutor recited the following factual basis for the plea. On October 13, 2001, at the MacDougall-Walker Reception/Special Management Unit, state police were called on the basis of an inmate on inmate assault. A lieutenant indicated that he observed the petitioner strike another inmate with a closed fist in the facial area approximately five times. While the other inmate was on the ground, the petitioner kicked him. The inmate was described as having serious facial lacerations and undisclosed damage to his left eye. As a result of these injuries, the inmate was transported to the University of Connecticut Health Center.

reviewed to determine whether the habeas court abused its discretion. A conclusion that its discretion has been abused requires a showing that the particular claim "involves issues [that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Internal quotation marks omitted.) *Faust* v. *Commissioner of Correction,* 85 Conn. App. 719, 721, 858 A.2d 853, cert. denied, 272 Conn. 909, 863 A.2d 701 (2004); see also *Simms* v. *Warden,* 230 Conn. 608, 616, 646 A.2d 126 (1994). If a habeas court is found to have abused its discretion, then an appellate court may review the rectitude of the denial of the writ of habeas corpus. See *Faust* v. *Commissioner of Correction,* supra, 721. Therefore, before we may reach the merits of the petitioner's claim that the court improperly decided the issues raised in his petition for a writ of habeas corpus, he first must show that the court abused its discretion in denying the petition for certification to appeal. See *Sadler* v. *Commissioner of Correction,* 90 Conn. App. 702, 703, 880 A.2d 902, cert. denied, 276 Conn. 902, 884 A.2d 1025 (2005).

I

INEFFECTIVE ASSISTANCE OF COUNSEL

We first address whether the habeas court abused its discretion in denying the petition for certification to appeal with respect to the petitioner's claim that he received ineffective assistance of counsel. According to the petitioner, counsel's representation was ineffective because counsel focused exclusively on plea negotiations and did not want to try the case, failed to conduct an adequate investigation, failed to advise the petitioner adequately regarding his plea and failed to represent the petitioner at his plea hearing.[3]

---

[3] The respondent asserts that the petitioner's claims on appeal are in procedural default. With regard to the petitioner's claim of ineffective assistance of counsel, it is well recognized that "[a]n ineffective assistance of

The following additional facts are necessary for our resolution of the petitioner's claim. On October 30, 2001, the petitioner appeared at Enfield Superior Court, and Douglas Ovian was appointed as the public defender to represent the petitioner in this case. From November, 2001, to May, 2002, several continuances were granted in order to permit defense counsel to conduct an investigation.

On November 8, 2001, the petitioner telephoned the office of the public defender and spoke with a secretary. The petitioner left a message for counsel, identifying two potential witnesses who might provide information to aid a claim of self-defense and requesting that counsel file a speedy trial motion. Ovian received the message and filed a request with an investigator with the public defender's office, asking the investigator to meet with the potential witnesses and, if necessary, with the petitioner. An investigator attempted to meet with the petitioner prior to his next court appearance; however, that meeting was thwarted because the department of correction, unbeknownst to the office of the public defender, had transferred the petitioner to another facility. In order to keep the petitioner abreast of the situation, the investigator wrote to the petitioner, informing the petitioner that he would have an opportunity to meet with Ovian and an investigator on the day of his next court appearance.

At the petitioner's next court appearance, he met at length with both Ovian and an investigator. Ovian advised the petitioner that it would not be in his best interest to file a speedy trial motion because such a

counsel claim is not subject to the usual rule requiring a direct appeal and is properly raised by way of a subsequent habeas corpus petition." *Taylor* v. *Commissioner of Correction*, 94 Conn. App. 772, 775 n.3, 895 A.2d 246 (2006). As a result, the respondent's contention that the petitioner's claim of ineffective assistance of counsel is in procedural default is unavailing.

motion would signal to the prosecutor that the petitioner did not want to engage in any pretrial negotiations. Ovian, however, also sought to avoid engaging in any discussions with the prosecutor prior to conducting a full investigation because he believed it would prejudice the petitioner. Between the petitioner's November and December, 2001 court appearances, the investigator assigned to the case was forced to take medical leave, stalling the investigation. Although the investigation was delayed, Ovian met with the petitioner at his December, 2001 court appearance and explained the charges against the petitioner. Ovian also provided the petitioner with the docket number for his case and requested that the court note on the mittimus that the petitioner requested that he be housed in a correctional institution separate from that of the alleged victim. The investigation for the petitioner's case was transferred to another investigator, and Ovian asked that the new investigator meet with the petitioner at his January, 2002 court appearance.

By February, 2002, the investigator had obtained statements from both of the witnesses identified by the petitioner in his message to Ovian.[4] At the petitioner's February, 2002 court appearance, Ovian and his investigator met with the petitioner. The petitioner was given copies of the statements. On the basis of the investigation that had been done, Ovian opined that there was not enough evidence to prevail on a claim of self-defense. Ovian and the petitioner agreed, however, that

---

[4] One witness, an inmate at the MacDougall-Walker Reception/Special Management Unit at the time of the incident, offered a statement in which he claimed to have witnessed the assault. The witness stated that he knew the petitioner as someone who would not initiate an assault and, to his knowledge, the petitioner had not been involved in any other altercations. The witness, however, did not see what initiated the assault. The second witness, who was also an inmate at the MacDougall-Walker Reception/Special Management Unit, stated that he saw the petitioner and the victim exchange words. Following the exchange, the witness saw the victim swing at the petitioner and the petitioner react.

further investigation could occur. An April, 2002 court appearance was scheduled in lieu of a March, 2002 appearance in order to facilitate further investigation. On March 11, 2002, Ovian received a letter from the petitioner, requesting documents related to the case. On April 2, Ovian received another letter from the petitioner, requesting that he file a motion to dismiss and that Ovian visit the petitioner at the Cheshire correctional institution. According to Ovian, his schedule did not permit him to arrange a visit prior to the petitioner's April 10 court appearance. Ovian unsuccessfully attempted to contact the petitioner by telephone to inform him of the conflict.

On April 10, 2002, Ovian and the investigator met with the petitioner again. The petitioner was given a copy of each of the documents he had requested previously by letter. The petitioner's case was transferred to the pretrial docket, and Ovian began substantive discussions with the state's attorney.

On May 15, 2002, Thomas McDonough, private counsel, telephoned Ovian to express an interest in taking over the case. According to Ovian, at this point he ceased his pursuit of discussions with the state's attorney because he did not want to prejudice the petitioner or the private counsel whom the petitioner was seeking to retain. At the petitioner's May, 2002 court appearance, the court canvassed the petitioner on the issue of whether or not he would be hiring McDonough. After adopting the petitioner's representations, the court granted a continuance to July 10, 2002, to permit the petitioner to hire McDonough. Ovian spoke with McDonough, who indicated his persistent interest in the case and informed Ovian that the petitioner had family members who were willing to pay for McDonough's services. Ovian relayed this information to the court, and the court continued the matter twice to August 9 and September 6, 2002. On August 12, 2002, Ovian telephoned

McDonough, who informed Ovian that, although the petitioner had yet to pay McDonough, the petitioner continued to communicate with prospective counsel. McDonough indicated to Ovian that he believed the petitioner would eventually retain him. From August 16, 2002, until the end of September, 2002, Ovian took medical leave, and Sandra Davis, from the office of the public defender, met with the petitioner and obtained another continuance, to October 1, 2002, for private counsel to appear.

On October 1, 2002, the petitioner made his final court appearance before this matter reached disposition. According to Ovian, he was surprised that private counsel had not filed an appearance, and he was prepared to request another continuance. The court, observing that several continuances had been granted already for the purpose of permitting the petitioner to retain private counsel, did not believe that private counsel would appear at any point in the future and denied the request for a continuance. Inquiring as to the substance of the state's plea offer, the court initiated plea negotiations between the parties. The state first offered one year consecutive to the sentence the petitioner was then serving. The court inquired into the facts of the case and the petitioner's biographical information, prior record and existing sentence. After an exchange between the petitioner and the court, there was an off the record discussion in which the court, presumably, modified the original offer to one year concurrent.[5] The court went back on the record, deciding to recess for lunch and to allow the petitioner to consider the new offer of one year concurrent with the sentence for which the petitioner currently was incarcerated.

---

[5] Although the substance of the dialogue between the petitioner and the court serves as a basis for the petitioner's second claim on appeal, it is not necessary to the resolution of the petitioner's claim of ineffective assistance of counsel.

At the habeas hearing, Ovian and the petitioner gave conflicting accounts as to what occurred during the recess. According to the petitioner, Ovian met with the petitioner during the break, but Ovian did not speak to the petitioner. The petitioner claimed that Ovian "just sat there" and "[h]e was, like, upset." The petitioner testified that he said to Ovian, "[I]t was a trial or nothing else." Ovian, on the other hand, testified that it is his practice to always "engage in the basics of the canvass" when discussing a plea with a client. Ovian explained that he had discussed the elements of the offense, the burden of proof, the petitioner's potential exposure, the right to trial by jury, his professional opinion that the petitioner's claim of self-defense was inadequate and that the decision to plead was the petitioner's to make. In addition, Ovian explained that he could understand why the petitioner believed he was upset. According to Ovian, the court's denial of his request for a continuance upset him because he had gone to the trouble of keeping in contact with McDonough and believed he was being placed in a position of advising a client who might not have any interest in working with him.[6] Ovian, however, decided that he should not stand in the way of the petitioner's opportunity to accept a favorable plea that would not remain on the table until the petitioner retained private counsel. Ovian's final words to the petitioner were to consider the plea and that he would meet the petitioner in the courtroom.

---

[6] On October 1, 2002, the petitioner filed a grievance against Ovian. At the time the petitioner entered his plea, Ovian and all other interested parties were unaware that the petitioner had filed a grievance. When asked whether he was satisfied with his attorney's advice and assistance, the petitioner responded in the affirmative and failed to call to the court's attention his pending grievance. Ovian's concern about being placed in a position of advising a client who might not have any interest in working with him arose out of his knowledge that the petitioner was attempting to hire private counsel and was unrelated to the grievance, of which Ovian had no knowledge prior to the disposition of the petitioner's case.

Upon entering the courtroom, the petitioner indicated that he wanted to withdraw his plea and enter a plea of guilty under the *Alford* doctrine. The prosecutor recited the factual basis for the plea.[7] The court engaged in a colloquy with the petitioner, asking whether the petitioner was under the influence of drugs or alcohol, whether the petitioner had an opportunity to speak with counsel, whether the petitioner was satisfied with counsel, whether the petitioner understood the state's allegations, and whether the petitioner wanted to waive his rights to trial by judge or jury, to confront and to cross-examine the state's witnesses, to present a defense and to remain silent. The court also explained the factual basis for the plea, the elements of assault in the second degree and the maximum sentence he could receive. The court discussed the collateral consequences of a plea, such as deportation, denial of naturalization and exclusion from admission to the United States. Having concluded the canvass, the court sentenced the petitioner to one year to be served concurrently with his existing sentence.

As previously stated, "[f]aced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on its merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim

---

[7] For a recitation of the facts on which the plea was based, see footnote 2.

involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . .

"We examine the petitioner's underlying claim of ineffective assistance of counsel in order to determine whether the habeas court abused its discretion in denying the petition for certification to appeal. Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . .

"In *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court enunciated the two requirements that must be met before a petitioner is entitled to reversal of a conviction due to ineffective assistance of counsel. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversarial process that renders the result unreliable." (Citations omitted; internal quotation marks omitted.) *Santiago* v. *Commissioner of Correction*, 90 Conn. App. 420, 423–25, 876 A.2d 1277, cert. denied, 275 Conn. 930, 883 A.2d 1246 (2005), cert. denied sub nom. *Santiago* v. *Lantz*, 547 U.S. 1007, 126 S. Ct. 1472, 164 L. Ed. 2d 254 (2006). "For ineffectiveness claims resulting from guilty pleas, we apply the standard set forth in *Hill* v. *Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), which modified *Strickland*'s prejudice prong. . . . To satisfy

the prejudice prong, the petitioner must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) *Hernandez* v. *Commissioner of Correction*, 82 Conn. App. 701, 706, 846 A.2d 889 (2004).

"The first component, generally referred to as the performance prong, requires that the petitioner show that counsel's representation fell below an objective standard of reasonableness. . . . In *Strickland*, the United States Supreme Court held that [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.) *Santiago* v. *Commissioner of Correction*, supra, 90 Conn. App. 425.

We carefully have reviewed the record, the court's ruling and the briefs submitted by the parties. The petitioner has not demonstrated that the issues raised with regard to the court's dismissal of his petition for a writ of habeas corpus on the issue of ineffective assistance of counsel are debatable among jurists of reason, that

a court could resolve the issues in a different manner or that the questions raised deserve encouragement to proceed further. See *Lozada* v. *Deeds*, 498 U.S. 430, 432, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991). Having failed to satisfy any of those criteria, the petitioner has failed to demonstrate that the court's denial of his petition for certification to appeal relative to his ineffective assistance of counsel claim reflects an abuse of discretion. See *Simms* v. *Warden*, supra, 230 Conn. 616.

## II

### VALIDITY OF THE PLEA

We next address the petitioner's claim that his plea was invalid. In support of this claim, the petitioner makes two subordinate claims. First, the petitioner claims that the court's involvement in the plea negotiations combined with an inappropriate comment directed toward the petitioner had the effect of coercing the petitioner into pleading guilty, thus violating his constitutional rights. Second, the petitioner argues that the trial court's plea canvass was in violation of our rules of practice and the state and federal constitutions in that the canvass failed to establish that the petitioner made a knowing, voluntary and intelligent plea.

The following additional procedural history is necessary to the resolution of the petitioner's claims. In her return to the petition for the writ of habeas corpus, the respondent raised the affirmative defense that the petitioner's claims were in procedural default because he had failed to file a motion to withdraw his plea prior to sentencing, pursuant to Practice Book § 39-26, and did not file a direct appeal, pursuant to Practice Book § 43-22. The respondent claimed that, in order for the habeas court to review the petitioner's claim, the petitioner first would have to demonstrate cause and prejudice, as established for federal habeas proceedings by *Wainwright* v. *Sykes*, 433 U.S. 72, 90–91, 97 S. Ct. 2497,

53 L. Ed. 2d 594 (1977), and adopted by our Supreme Court for state habeas proceedings in *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 409, 589 A.2d 1214 (1991). In his reply to the respondent's return, the petitioner claimed his right to produce evidence of cause and prejudice. In her brief filed with this court, the respondent, again, raises the issue of procedural default. The petitioner, in his reply brief, asserts for the first time that there was no procedural default at all.[8] In the alternative, the petitioner, also for the first time, claims that he had no opportunity between the court's acceptance of the plea and the imposition of the sentence to effect a withdrawal of his plea and that, because the trial court never advised him of his appellate rights, he failed to file a direct appeal.[9]

We examine the petitioner's underlying claim that his plea was not knowing, voluntary and intelligent in order to determine whether the habeas court abused its discretion in denying the petition for certification to appeal. The validity of a guilty plea can be challenged

[8] "This court is not bound to consider claimed errors unless it appears on the record that the question was distinctly raised . . . and was ruled upon and decided by the court adversely to the appellant's claim." (Internal quotation marks omitted.) *Copeland* v. *Warden*, 26 Conn. App. 10, 13–14, 596 A.2d 477 (1991), aff'd, 225 Conn. 46, 621 A.2d 1311 (1993). Under circumstances such as these, this court has declined to review similar claims because to do so "would [have] amount[ed] to an ambuscade of the [habeas] judge." (Internal quotation marks omitted.) *Oliphant* v. *Commissioner of Correction*, 80 Conn. App. 613, 618, 836 A.2d 471 (2003), cert. denied, 268 Conn. 907, 845 A.2d 412 (2004).

[9] Specifically, the petitioner claims that, when a plea is entered and a sentence is imposed in the same proceeding, the petitioner has no opportunity to withdraw his plea. This question was not distinctly raised before the habeas court, and we are not bound to consider it. See footnote 8. With regard to the petitioner's claim that the trial court's failure to advise him of his appellate rights induced his failure to pursue a direct appeal, we note that there is no evidence in the record indicating whether or not defense counsel advised the petitioner of his appellate rights. This question also was not distinctly raised before the habeas court, and we therefore are not bound to consider it.

before sentencing pursuant to Practice Book § 39-26 and on direct appeal, pursuant to Practice Book § 43-22. See *Bowers* v. *Commissioner of Correction*, 33 Conn. App. 449, 450–51, 636 A.2d 388, cert. denied, 228 Conn. 929, 640 A.2d 115 (1994). Here, the petitioner failed to raise his claim regarding the validity of his guilty plea before sentencing or on direct appeal. The petitioner raised the claim for the first time before the habeas court. In habeas proceedings, the appropriate standard for reviewability of a constitutional claim not raised before sentencing or on direct appeal is the *Wainwright* cause and prejudice standard. *Jackson* v. *Commissioner of Correction*, 227 Conn. 124, 133–34, 136, 629 A.2d 413 (1993). "The petitioner must show good cause for his failure to preserve a claim at trial and actual prejudice resulting from the alleged constitutional violation." *Daniels* v. *Warden*, 28 Conn. App. 64, 71, 609 A.2d 1052, cert. denied, 223 Conn. 924, 614 A.2d 820 (1992). Here, the habeas court made no finding regarding whether the petitioner had met his burden of establishing cause and prejudice.

This court is permitted to review the record to determine whether any evidence of cause and prejudice was provided by the petitioner. See *Giannotti* v. *Warden*, 26 Conn. App. 125, 129, 599 A.2d 26 (1991), cert. denied, 221 Conn. 905, 600 A.2d 1359 (1992). "Where no evidence has been provided, this court can independently conclude that the petitioner has failed to meet the cause and prejudice test. Where, however, there has been evidence presented on the issues of cause and prejudice and the habeas court does not make a finding on the record that the petitioner has either met or failed to meet his burden of establishing cause and prejudice, we will not review the inadequately preserved constitutional claim on the merits. Rather, we will remand the case to the habeas court for it to determine whether the petitioner has satisfied his burden of establishing

cause and prejudice." (Internal quotation marks omitted.) *Daniels* v. *Warden*, supra, 28 Conn. App. 72. "As our Supreme Court noted in [*Johnson* v. *Commissioner of Correction*, supra, 218 Conn. 419], it is the duty of the habeas court to make such a determination." *Daniels* v. *Warden*, supra, 72.

Here, a review of the record of the habeas proceeding reveals that the petitioner failed to provide evidence of cause and prejudice for his failure to raise these issues through a motion to withdraw his plea or by direct appeal. He therefore has failed to carry his burden of showing good cause and prejudice; *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 41 n.14, 779 A.2d 80 (2001); and is not entitled to review of his substantive claim that his plea was invalid. As a result, the petitioner has not demonstrated that the issues raised with regard to the court's dismissal of his petition for a writ of habeas corpus are debatable among jurists of reason, that a court could resolve the issues in a different manner or that the questions raised deserve encouragement to proceed further. See *Lozada* v. *Deeds*, supra, 498 U.S. 432. Having failed to satisfy any of those criteria, the petitioner has failed to demonstrate that the court's denial of his petition for certification to appeal reflects an abuse of discretion. See *Simms* v. *Warden*, supra, 230 Conn. 616.

III

DUE PROCESS

In his final claim on appeal, the petitioner argues that the habeas court's standing order, barring posttrial briefs except in extraordinary circumstances, violates his due process rights. Specifically, the petitioner claims that ineffective assistance of counsel claims are particularly fact bound, and the requirement of pretrial briefs unnecessarily forces him to engage in speculative argument. He claims that posttrial briefs would permit him

to craft legal arguments around the evidence actually presented. The petitioner claims that the bar on post-trial briefs violates fundamental fairness and, thus, due process because it inhibits his ability to advance his legal positions fully. The petitioner cites no case in support of his contention, either directly or by way of analogy, and we can find none that sustain it. The petitioner had an opportunity to file a pretrial brief and, presumably, at the time the pretrial brief was due, the petitioner was aware of what evidence he intended to present during the hearing, permitting him to craft his argument around that evidence. The petitioner was also permitted to argue at the close of the hearing. This afforded him the opportunity to refine any arguments on the basis of any evidence that was presented that he did not anticipate previously. We therefore cannot conclude that any due process violation occurred.

The appeal is dismissed.

In this opinion the other judges concurred.