ALVIN WILSON *v.* COMMISSIONER OF CORRECTION
(AC 27147)

Schaller, Lavine and Dupont, Js.

Argued May 24—officially released October 16, 2007

*Deborah G. Stevenson*, special public defender, for the appellant (petitioner).

*Yamini Menon*, deputy assistant state's attorney, with whom were *Michael E. O'Hare*, supervisory assistant state's attorney, and, on the brief, *James E. Thomas*, state's attorney, and *Anne F. Mahoney* and *Angela R. Macchiarulo*, senior assistant state's attorneys, for the appellee (respondent).

*Opinion*

DUPONT, J. The petitioner, Alvin Wilson, appeals following the habeas court's denial of his petition, filed pursuant to General Statutes § 52-470 (b),[1] for certification to appeal from the judgment denying his petition for a writ of habeas corpus. The petitioner argues that his counsel rendered ineffective assistance at his trial for violation of a condition of probation that he submit to electronic monitoring and that the habeas court acted

---

[1] General Statutes § 52-470 (b) provides: "No appeal from the judgment rendered in a habeas corpus proceeding brought by or on behalf of a person who has been convicted of a crime in order to obtain such person's release may be taken unless the appellant, within ten days after the case is decided, petitions the judge before whom the case was tried or, if such judge is unavailable, a judge of the Superior Court designated by the Chief Court Administrator, to certify that a question is involved in the decision which ought to be reviewed by the court having jurisdiction and the judge so certifies."

improperly in certain of its rulings.[2] We dismiss the petitioner's appeal.

Following a guilty plea to charges of sexual assault and risk of injury to a child, the petitioner was originally sentenced to a term of twelve years imprisonment, suspended after one year, with ten years probation, by the court, *Espinosa, J.,* on May 15, 1997. On January 13, 1998, the petitioner was charged with a violation of a condition of probation,[3] and on May 15, 1998, was sentenced by the court, *Fasano, J.,* to a term of eight years imprisonment, suspended after two years, with three years probation entailing special conditions. On February 25, 2000, the office of adult probation, which was responsible for monitoring the petitioner during his probationary period, made a referral to Electronic Monitoring Systems, Inc. (EMS), to install an electronic monitoring device on the petitioner, pursuant to a condition of his probation. Subsequently, on March 20, 2000, the office of adult probation successfully applied for a warrant to arrest the petitioner on the basis of the petitioner's failure to comply with that condition of probation. The circumstances regarding this subsequent violation of probation are at issue here. The petitioner, represented by attorney Michael Isko, appeared before the court, *Miano, J.,* to answer to the violation of probation charge. After a hearing, the court found that the petitioner had violated a condition of his probation and rendered judgment imposing the remaining

[2] We may review on appeal the claim that the court improperly rejected the petitioner's claim of ineffective assistance of trial counsel as well as the claim of impropriety by the habeas court during its hearing on the petition for a writ of habeas corpus. See *Mitchell* v. *Commissioner of Correction,* 93 Conn. App. 719, 891 A.2d 25, cert. denied, 278 Conn. 902, 896 A.2d 104 (2006); *Morgan* v. *Commissioner of Correction,* 87 Conn. App. 126, 866 A.2d 649 (2005); *Ostolaza* v. *Warden,* 26 Conn. App. 758, 603 A.2d 768, cert. denied, 222 Conn. 906, 608 A.2d 692 (1992).

[3] This violation was unrelated to the violation of a condition of probation at issue here.

unexecuted portion of the petitioner's original sentence. The petitioner filed a direct appeal from that judgment, which was affirmed by this court in a memorandum decision. *State* v. *Wilson*, 74 Conn. App. 912, 815 A.2d 301, cert. denied, 263 Conn. 904, 819 A.2d 838 (2003).

The petitioner filed a petition for a writ of habeas corpus on June 30, 2003, primarily alleging ineffective assistance of trial counsel. On July 2, 2003, the petitioner waived his right to habeas counsel, and the court, *White*, *J.*, accepted the waiver after canvassing the petitioner. The habeas court, *Elgo*, *J.*, denied the petition for a writ of habeas corpus and issued a written memorandum of decision on August 23, 2005. The court then denied the petition for certification to appeal. The petitioner now appeals, following the denial of certification, from the judgment denying his petition for a writ of habeas corpus, pursuant to *Simms* v. *Warden*, 229 Conn. 178, 186–89, 640 A.2d 601 (1994). In addition, the petitioner challenges various procedures employed by the court in reaching its determination.

When a habeas court denies a petition for certification to review its determination, a petitioner seeking review must first demonstrate that the court abused its discretion in denying the petition. *Fernandez* v. *Commissioner of Correction*, 96 Conn. App. 251, 261, 900 A.2d 54, cert. denied, 280 Conn. 908, 907 A.2d 89 (2006). To prove an abuse of discretion, the petitioner must demonstrate that the resolution of the underlying claim involves issues that are debatable among jurists of reason, that a court could resolve the issues in a different manner or that the questions are adequate to deserve encouragement to proceed further. Id., 261–62.

I

We first address the petitioner's claims that his trial counsel was ineffective at the violation of probation

hearing.[4] The petitioner argues that his defense counsel failed (1) to investigate the petitioner's claim of actual innocence adequately,[5] (2) to object to the admission of various pieces of evidence and (3) to object to the state's alleged withholding of exculpatory information.

The following facts found by the court and evidence presented to the court by the parties are relevant to the petitioner's claim. On February 25, 2000, the office of adult probation requested EMS to install an electronic monitoring device on the petitioner on February 28, 2000. The court found that employees of EMS made several unsuccessful attempts between February 28 and March 7, 2000, to install the electronic monitoring device. The court had before it, among other things, three notices that were purportedly sent from EMS to the office of adult probation, stating that EMS employees had been unsuccessful in their attempts to install the electronic monitoring device on March 2, 3, and 7, 2000. At the trial on the charge of violation of probation, the state called two witnesses, the petitioner's probation officer and an employee of EMS who had formerly been a monitoring installer, but who was then the accounts manager. The petitioner did not call any witnesses or testify at that trial. The petitioner did testify at the habeas trial and stated, among other things, that no one had attempted to install the monitoring device on him within the relevant periods.[6] He also asserted

[1] In his petition for a writ of habeas corpus, the petitioner also claimed that his appellate counsel was ineffective. The court found that he had abandoned this claim. Further, the petitioner has not briefed this issue on appeal, and, therefore, we do not review it.

[5] The petitioner asserts several times in his appellate brief that he is actually innocent of the underlying crimes as well as of the violation of probation, and that his trial counsel was also ineffective for this reason. We decline to review this and any other of the petitioner's arguments that his counsel at the violation of probation hearing was ineffective for failure to attack the underlying conviction of the crimes to which the petitioner had pleaded guilty in 1997.

[6] Specifically, the petitioner testified: "I was accused of not wearing the monitoring device that was never given to me . . . . [The probation office

that the notices purportedly sent from EMS to his probation officer were fabricated. He did not, however, call any other witnesses or produce any other evidence supporting his testimony that he was actually innocent of the probation violation.

To prove a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient and that this deficiency caused prejudice. See *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "[O]ur review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Fernandez* v. *Commissioner of Correction*, supra, 96 Conn. App. 262. Our standard to review the court's findings of underlying facts, however, is the familiar clearly erroneous standard. See *Festo* v. *Luckart*, 191 Conn. 622, 635–36, 469 A.2d 1181 (1983). Generally, this court "does not retry the case or evaluate the credibility of the witnesses." (Internal quotation marks omitted.) *Payne* v. *Commissioner of Correction*, 62 Conn. App. 583, 586, 772 A.2d 630 (2001).

## A

The petitioner argues first that his trial counsel was ineffective because counsel did not adequately investigate his allegation of actual innocence of the probation

stated] that someone came out to my residence to give me a monitoring device for adult probation, which was never offered to me, and I was convicted on the basis of these three urgent notices right here from EMS stating that their worker had come out to my residence, which I never seen a worker or never heard of anybody from that company. And I had my [correction] counselor call in. . . . They stated they never heard of me. They had no record of me ever having been to be placed on a monitoring device, which these documents here was used to convict me."

He further testified that "[EMS] had me sitting at my house three days in one spot falling asleep by the phone. Nobody ever showed, so I called the police department. They stated they didn't have time to come out to my residence and watch to see if somebody's going to come out there to give me a monitor."

violation. Specifically, the petitioner claims that his trial counsel should have conducted a preliminary background check of the probation officer who reported that the petitioner had refused to allow EMS to install the monitoring device, subpoenaed the probation officer's records regarding the installation attempts and contacted EMS to interview those employees who had personal information about the installation attempts.

We need not determine, in this case, the extent of the duty of defense counsel to investigate a claim of actual innocence. For the petitioner to prevail on his argument that defense counsel conducted an inadequate investigation, the petitioner must establish both that counsel's performance fell below the constitutional minimum and that this deficiency prejudiced the case. The only evidence that the petitioner produced before the court of his actual innocence was his testimony, which the court did not credit. Having failed to present any credible evidence to the court that he was actually innocent, the petitioner is unable to show that his case was prejudiced by defense counsel's alleged failure at the violation of probation trial to conduct a more rigorous investigation into whether EMS employees actually tried to install the monitoring device.

We conclude that the petitioner has failed to show that the court abused its discretion in denying the petition for certification to appeal on this issue.

B

The petitioner next argues that his counsel's representation was ineffective because counsel failed to object to the admission of three EMS notices regarding its employees' failed attempts to install a monitoring device.[7] The petitioner asserts that because the state

---

[7] In addition, the petitioner asserts that his defense counsel was ineffective because he "failed to object to the petitioner's inability to confront his accusers . . . ." The petitioner has not provided any analysis of this claim, and so we decline to afford it review.

did not produce the drafters of the documents, defense counsel had an obligation to object.

The court, reviewing the petitioner's claim, rejected it on the ground that the petitioner failed to produce any evidence demonstrating that the documents were not authentic and, thus, failed to produce evidence that his case was prejudiced by counsel's failure to object to their admission. We agree with the court that the petitioner failed to provide the court with sufficient evidence to find prejudice. Furthermore, there is no credible evidence in the record that indicates that the notices were not business records, kept in the ordinary course of business. See Conn. Code Evid. § 8-4. The habeas court did not abuse its discretion in denying the petition for certification to appeal on this issue.

C

The petitioner's final argument regarding the performance of his trial counsel is that counsel was ineffective because he failed to object to the state's alleged failure to disclose exculpatory evidence. In support of his argument, the petitioner asserts that the state failed to disclose the names of the EMS employees who attempted to install the monitoring device, in violation of his due process rights as articulated in *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and its progeny.

To establish a claim under *Brady*, the petitioner must establish that (1) the evidence allegedly suppressed was favorable to the petitioner, either because it was exculpatory or impeaching, (2) the evidence was suppressed by the state, either wilfully or inadvertently and (3) prejudice resulted from its absence. *State* v. *Ortiz*, 280 Conn. 686, 717, 911 A.2d 1055 (2006).

The petitioner here has failed to establish the first requirement of a *Brady* claim. Because the petitioner

had not produced before the court any credible evidence that the EMS employees' testimony would have been favorable to him, he has not established that the evidence would have been exculpatory.

The petitioner has not demonstrated that the denial of his petition for certification to appeal was an abuse of discretion with respect to his claim of ineffective assistance of trial counsel. The issues he raised were not debatable among jurists of reason, nor has he shown that a court could have resolved the issues differently or that the questions raised were adequate to deserve encouragement to proceed further.

## II

We next address the issues the petitioner raises concerning the actions of the habeas court. The petitioner argues that the court (1) failed to conduct an adequate canvass before accepting his waiver of counsel, (2) failed to ensure that he had access to the courts, (3) improperly failed to grant a continuance and (4) conducted an inadequate review of his actual innocence claim. In effect, he claims that these actions were an abuse of discretion or constitutional deprivations.

## A

The petitioner first claims that the court conducted an inadequate canvass when determining whether his waiver of his right to habeas counsel was knowing and voluntary. Specifically, the petitioner argues that the court inadequately informed him of (1) his right to appointed counsel, (2) the nature of the charges and proceedings and the range of permissible punishments, and (3) the conditional nature of his access to an investigator from the public defender's office. We disagree.

Petitioners seeking habeas corpus review are entitled to the assignment of counsel when certain conditions

are satisfied.[8] See Practice Book § 44-1. The petitioner may waive this right, and proceed pro se, but only after the court is satisfied that the waiver is knowing and voluntary. *State* v. *Diaz*, 274 Conn. 818, 829, 878 A.2d 1078 (2005). Practice Book § 44-3 provides an analytical framework to assist courts in assessing whether a party's waiver of counsel is knowing and voluntary.[9] Section 44-3 provides in relevant part that the court may accept a petitioner's wavier of counsel after the petitioner: "(1) Has been clearly advised of the right to the assistance of counsel, including the right to the assignment of counsel when so entitled; (2) Possesses the intelligence and capacity to appreciate the consequences of the decision to represent oneself; (3) Comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and (4) Has been made aware of the dangers and disadvantages of self-representation." Our Supreme Court has made clear that the specific provisions of § 44-3 are not mandatory and that the waiver canvass is adequate, regardless of its particular form, as long as it sufficiently demonstrates that the waiver was knowing and voluntary. *State* v. *Webb*, 238 Conn. 389, 429, 680 A.2d 147 (1996), aff'd after remand, 252 Conn. 128, 750 A.2d 448, cert. denied, 531 U.S. 835, 121 S. Ct. 93, 148 L. Ed. 2d 53 (2000).

The petitioner first argues that the court conducted an inadequate inquiry regarding the extent of his right to counsel. The petitioner appears to rest his argument on his assertion that he is entitled to the assignment of counsel "at any stage," even after he had waived this

---

[8] The respondent, the commissioner of correction, does not challenge the petitioner's initial eligibility for the assignment of habeas counsel by reason of indigency pursuant to Practice Book § 44-1.

[9] The right to counsel and the right to self-representation are mutually exclusive but are both constitutionally protected interests. A petitioner may choose to waive either right. *State* v. *Diaz*, supra, 274 Conn. 828–29.

right, and that the court did not inform him of this. He does not argue that the inquiry regarding his knowledge of his right to counsel was otherwise deficient.[10] Although he argues that this "right" is both statutory and constitutional, the petitioner cites no authority supporting the proposition that the court should have informed him that he had a right to ask for the appointment of counsel as the trial progressed, having previously waived his right to counsel.

The petitioner next argues that he was not adequately informed of the charges against him and the potential punishments he might face. The petitioner primarily relies on *State* v. *Diaz*, supra, 274 Conn. 818. In *Diaz*, our Supreme Court reversed the trial court's determination that the defendant had adequately waived his right to trial counsel because, it determined, the defendant had not been adequately informed of the range of punishments he was facing. Id., 831. The petitioner here provides no analysis indicating that the *Diaz* analysis is relevant to determine whether a *petitioner's* waiver of *habeas counsel* is knowing and voluntary. Practice Book § 44-3 (3) requires that a defendant comprehend the "range of permissible punishments . . . ." Unlike a defendant at trial, in which Practice Book § 44-3 (3) is appropriate, the petitioner in a habeas proceeding involving a violation of a condition of probation is not facing additional or new criminal charges. In a habeas proceeding, it is the petitioner who is levying charges against the state, and the petitioner faces no further punishment if he fails to obtain the habeas relief requested. Thus, the only punishment he would face is

---

[10] The parties do not discuss whether the court had an obligation to apprise the petitioner of its authority to appoint standby counsel after the petitioner had waived his right to appointed counsel in order to fulfill its responsibility to ensure that the petitioner had been "clearly advised of the right to the assistance of counsel . . . ." Practice Book § 44-3 (1). Therefore, we do not address this issue.

the known punishment from the judgment he is collaterally attacking.[11]

Finally, the petitioner argues that his canvass was inadequate because he did not understand at the time he waived his right to counsel that he would lose access to the public defender's investigator once he had waived his right to appointed counsel.

After the court, *White, J.*, informed the petitioner that he would not be entitled to appointed counsel after having waived his right, the petitioner asked the court if it would be able to provide him with an investigator. The court stated that it would ask the public defender's office to make an investigator available, but specifically told the petitioner: "I don't know whether they'll do it." The court then proceeded with the canvass. After the court granted the petitioner's motion to proceed pro se, it again told the petitioner that it would "ask the clerk to contact the public defender's office and have them have their investigator contact you and try to work with you. . . . But I want to make it abundantly clear, Mr. Wilson, if they don't send their investigator, then I can't do anything about that."

The petitioner and the court then engaged in the following colloquy:

"[The Petitioner]: All right. Let me ask you a question. They got this public defender here to contact me and everything, right? What would be the difference in contacting an investigator and having him come see me, just like you did with [the petitioner's prior counsel]?

"The Court: She's a special public defender, and she, as part of the public defender unit overall, can use their resources, including their investigator. You don't want

---

[11] The petitioner erroneously refers to the defendant in *Diaz* as the "petitioner" several times in his brief. The defendant in *Diaz*, however, was challenging the trial court's canvass preceding his waiver of *trial* counsel.

the public defender, and you don't want a special public defender. You want to do it on your own. That's why I told you it's difficult.

"[The Petitioner]: It's not difficult. All I'm asking the court is to provide me with an investigator. That's not asking a whole lot.

"The Court: I just said I'll ask them to do it, but I don't know if they will or not because you're not one of their clients. You're your own client.

"[The Petitioner]: I'm not entitled to an investigator just like I am a public defender?

\* \* \*

"The Court: The investigator is part of the special public defender's office. . . . Either you want the whole package or you don't want any of it. . . . Do you see what I mean?

"[The Petitioner]: I understand that. . . . I've got a certain thing. I need it investigated. Can you have it done?

"The Court: Can I have it done? . . . You're going to have to show me where I have the authority or how I can do that. . . .

"[The Petitioner]: I've got some false documents here that was given . . . was entered as evidence by . . . the public defender . . . and the probation officer. . . . I want an investigator so I can prove my case. That's all I need.

"The Court: Mr. Wilson, I don't think you understand what I'm saying. . . . The system says you're entitled to counsel, and if you can't afford counsel, there's a statute that says you can get the public defender and use the resources of their office, but you just said you don't want the public defender and their resources.

And since you're representing yourself, part of your representing yourself means you get your own investigator, you do your own paperwork, you argue your own case. . . . You're saying, 'Judge, go out and hire me an investigator.'

"[The Petitioner]: No, I want to use the one you have here. I talked to him already. I was wondering if you could okay it, just like you did with the lawyer.

\* \* \*

"The Court: I just told the clerk to contact the [public defender] and ask them to help you out. . . . So, you understand that now you're representing yourself, correct?

"[The Petitioner]: Yes."

The court then moved on to other matters.

Although it does appear that the petitioner had some confusion about his rights after the court formally granted his petition to proceed pro se, the court engaged in an extensive discussion with the petitioner to ensure that he was clear that he did not have an independent right to an appointed investigator. Although the court did not specifically ask the petitioner again if he remained sure of his decision to proceed pro se after learning that he would not be appointed an investigator, the court did ask him, after the discussion, whether he then understood the extent of his rights, to which he answered that he did. Although the petitioner did attempt to request an investigator, he at no point indicated that he wanted to withdraw his request to proceed pro se. We conclude that the petitioner's waiver of his habeas counsel was knowing and voluntary.

The habeas court did not abuse its discretion in denying the petition for certification to appeal on the issue of inadequate canvass.

B

Next, the petitioner claims that the court improperly failed to secure his right of access to the courts by failing to appoint him standby counsel sua sponte, to inform him that he had an opportunity to request standby counsel[12] and to appoint an investigator for him. We are unpersuaded that the petitioner was denied his right to access the courts.[13]

"It is now established beyond doubt that prisoners have a constitutional right of access to the courts . . . [and that such access must be] adequate, effective and meaningful." (Internal quotation marks omitted.) *Washington* v. *Meachum*, 238 Conn. 692, 735, 680 A.2d 262 (1996). This right of access to the courts is not limited to defendants during trial and direct appeal but extends to convicted individuals "seeking new trials, release from confinement, or vindication of fundamental civil rights." *Bounds* v. *Smith*, 430 U.S. 817, 827, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977). "Decisions of the United States Supreme Court have consistently required [s]tates to shoulder affirmative obligations to assure all prisoners meaningful access to the courts." (Internal quotation marks omitted.) *Washington* v. *Meachum*, supra, 735. "The tools [the right of access] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis* v. *Casey*, 518 U.S. 343, 355, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996).

---

[12] The petitioner has provided no analysis supporting a claim that he had a statutory right to standby counsel or at least a right to be notified that the court had the authority to appoint standby counsel, and, therefore, to the extent that the petitioner has raised such a claim, we decline to review it, as it is insufficiently briefed.

[13] Although the respondent, the commissioner of correction, asserts that the petitioner has no freestanding constitutional right to standby counsel or an investigator, the respondent does not directly address the petitioner's claim that he was not provided with adequate access to the courts.

Although the right of access to the courts is fundamental, neither the United States Supreme Court nor our Supreme Court has delineated precisely what procedures are necessary to satisfy the right. Our Supreme Court, however, has provided examples of tools that are sufficient. "Reasonable access to a law library within the correctional facilities . . . consultation with attorneys or their representatives through the mails and personal visits . . . and consultation with attorneys over the telephone within department guidelines . . . are all valid methods of ensuring that inmates are not denied the access to the courts to which they are entitled by the fourteenth amendment and article first, § 10 [of the Connecticut constitution]." (Citations omitted.) *Washington* v. *Meachum*, supra, 238 Conn. 737. Our Supreme Court has also stated that the appointment of standby counsel satisfies the state's obligation to provide access to its courts, at least when the party has waived a right to appointed counsel. *State* v. *Fernandez*, 254 Conn. 637, 658, 758 A.2d 842 (2000), cert. denied, 532 U.S. 913, 121 S. Ct. 1247, 149 L. Ed. 2d 153 (2001). The analysis to determine whether the right to access has been satisfied does not vary depending on whether the character of the trial is civil or criminal. See *Washington* v. *Meachum*, supra, 735–37 (civil); *State* v. *Fernandez*, supra, 653–55 (criminal). Petitioners seeking habeas review may employ the assistance of counsel, pursuant to Practice Book § 44-1. Petitioners who are indigent or who otherwise qualify are entitled to appointed counsel. Id. Additionally, the court has the discretion to appoint standby counsel in appropriate cases. Practice Book § 44-4. That section provides in relevant part that "the judicial authority *may* appoint standby counsel . . . *in cases expected to be long or complicated* or in which there are multiple defendants . . . ." (Emphasis added.) Practice Book § 44-4.

The petitioner primarily relies on *State* v. *Fernandez*, supra, 254 Conn. 637, to argue that his right to access to the courts was not satisfied. In *Fernandez*, the criminal defendant had attempted to defend himself, pro se, against the state's charges of felony murder in violation of General Statutes § 53a-54c, murder in violation of General Statutes § 53a-54a (a), burglary in the first degree in violation of General Statutes § 53a-101 (a), arson in the first degree in violation of General Statutes § 53a-111 (a) (1) and tampering with physical evidence in violation of General Statutes § 53a-155 (a) (1). The defendant in *Fernandez* argued, among other things, that he was entitled to access an adequate law library, despite the fact that he had been assigned standby counsel, who had conducted legal research on the defendant's behalf. Our Supreme Court disagreed. Analyzing the claim pursuant to *Bounds* v. *Smith*, supra, 430 U.S. 817, and its relevant progeny, the court held: "A criminal defendant who knowingly and intelligently waives the right to counsel and who has been appointed standby counsel is not constitutionally entitled to access to a law library. Rather, the appointment of standby counsel satisfies the state's obligation to provide the defendant with access to the courts." *State* v. *Fernandez*, supra, 658.

The petitioner argues that *Fernandez* stands for the proposition that a pro se criminal defendant or habeas petitioner is entitled to standby counsel. The petitioner misconstrues *Fernandez*, however, and therefore misstates the relevant inquiry. When faced with a claim of right to access the courts, the central determination is whether the right of access was satisfied, not whether there was a particular right to counsel, legal assistance or a library. Only after a petitioner has demonstrated that he was denied his right to access the courts should this court consider any additional tools to which the petitioner might be entitled. We do not reach that

inquiry here, however, because we conclude that on the facts before us, the petitioner was not denied his right to access the courts.

The petitioner was initially appointed counsel. He waived his right to counsel and elected to present his claims pro se. The respondent, the commissioner of correction, asserts that the petitioner dismissed his appointed counsel over tactical disputes, but the petitioner argues that the dismissal was over strategic, rather than tactical, disagreements. In any case, the fact remains that the petitioner had appointed counsel and, as we have discussed, elected to waive counsel. Although in some cases in which difficult or complicated legal issues arise, the appointment of counsel, which is later waived, may not, of itself, fulfill a petitioner's right to access the courts; see, e.g., id., 637; this is not such a case. In this case, the issues at the habeas trial regarding the petitioner's violation of probation were not complex and hinged on his ability to convince the court of a factual assertion, namely, that no employee of EMS attempted to install the monitoring device at the relevant times. On these facts, we conclude that the appointment of counsel satisfied the petitioner's right to access the courts, even though the petitioner ultimately decided to reject that counsel.

The petitioner also asserts that he was denied his right to access the courts because the habeas court failed to appoint an investigator to assist him in gathering facts relevant to his claims. The petitioner does not, however, provide any analysis supporting the assertion that the right of access, as articulated in *Bounds* v. *Smith*, supra, 430 U.S. 817, applies to fact gathering. All of the right to access cases the parties have cited, and of which we are otherwise aware, concern the right to access legal materials and legal knowledge, not facts. The petitioner cites *Ake* v. *Oklahoma*, 470 U.S. 68, 71, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985), to support his

assertion that he was entitled to an investigator. In *Ake*, the United States Supreme Court determined that the indigent defendant could not be tried for a capital crime without the assistance of an appointed psychiatrist at trial. See id., 83. The petitioner has presented no authority extending the analysis of *Ake* to either collateral attacks on a sentence or noncapital criminal charges. We further note that the petitioner in this case, when appointed counsel, also had access to an investigator. From the transcript, it appears that the petitioner had spoken with an investigator prior to his waiver of counsel. Therefore, to the extent that access to courts also governs a petitioner's access to fact gathering tools, we conclude that the appointment of counsel satisfied the state's obligation to assist the petitioner in gathering facts, as well. Therefore, we conclude that the petitioner in this case was adequately provided with access to the courts and has failed to show that the court abused its discretion in denying his petition for certification to appeal on that issue.

C

The petitioner next claims that the court improperly failed to continue the matter, sua sponte, when he indicated that his witnesses would not be able to testify two days earlier than the case had originally been scheduled.[14] The petitioner also claims that the failure to continue the case was in effect a denial of an evidentiary hearing, which denied him "the tools with which to conduct his defense."[15]

---

[14] The court, at the request of the respondent, rescheduled the case from May 20 to May 18, 2005. In addition to arguing that the court abused its discretion in not, sua sponte, granting a continuance, the petitioner argues, in one sentence in his appellate brief, that the rescheduling was also an abuse of discretion.

[15] The petitioner's blanket claim that the failure of the court to order a continuance is the equivalent of a denial of a motion for an evidentiary hearing that caused a violation of the due process clause of the United States constitution, as well as the state constitution, is unsupported by decisional authority. His sole citation, *Mercer* v. *Commissioner of Correc-*

After the parties had entered various exhibits into the record, the court and the petitioner engaged in the following colloquy:

"The Court: All right. So, if you're all set with what has already been offered, you can proceed. It's your burden, sir, so you need to . . . . Who are you going to call as a witness? Do you want to call yourself or . . . .

"[The Petitioner]: I guess I have to. Nobody . . . the date I put it, write it down that I was going to call for [May, 20, 2005], you know, I had no way of contacting anyone, so, you know . . . I didn't know it was going to be today.

"The Court: All right.

\* \* \*

"The Court: All right. Well, let's see. The court did approve a change in the trial date per request of [the respondent]. Sir, how many witnesses . . . . Did you already make arrangements then for the witnesses to appear on the twentieth?

"[The Petitioner]: Your Honor, I can prove, establish my case without the witnesses. I've got what I need to establish my case right here.

"The Court: All right. So, at this point you're indicating that you don't need to offer witnesses at this time?

"[The Petitioner]: Yes ma'am."

The determination of whether to grant a motion for a continuance is within the discretion of the court, and we will not disturb the determination absent an abuse

---

*tion*, 230 Conn. 88, 644 A.2d 340 (1994), is inapposite because that case involved the habeas court's failure to provide the habeas petitioner with any hearing at all. Id., 92. Here, the petitioner was provided with a hearing, at which he testified.

of that discretion. *State* v. *Hamilton*, 228 Conn. 234, 239, 636 A.2d 760 (1994).

As the colloquy reveals, the court did engage in an inquiry regarding the petitioner's ability to present his case without the benefit of witnesses. Before the court could ask the petitioner whether he required a continuance, however, the petitioner assured the court that he was ready to present his case. He specifically told the court that he could "prove, establish my case without the witnesses." The petitioner did not seek a continuance at any time, either before or after his colloquy with the court, nor did he indicate the relevance or necessity of any testimony any witness might give as to whether he had violated the condition of his probation. Because the petitioner did not request a continuance, but instead assured the court that he was ready to proceed without the benefit of witnesses, we conclude that the court did not abuse its discretion in failing to order a continuance. Nor did the court abuse its discretion in denying the petition for certification to appeal on that issue.

D

The petitioner finally claims that the court used an incorrect legal standard to analyze his actual innocence claim. Specifically, the petitioner asserts that the court failed to consider evidence produced during the violation of probation trial, failed to "seriously consider" the evidence he presented at the habeas trial and failed to determine explicitly whether a reasonable fact finder would find him guilty. We disagree.

The following facts are relevant to the petitioner's claim. At the violation of probation trial, held February 8, 2002, the petitioner argued, among other things, that the state had provided insufficient evidence to prove his guilt of a violation of a condition of probation. The petitioner did not offer any witnesses or other evidence

at the trial and declined to testify. At his habeas trial, the petitioner again provided no witnesses, although he did testify himself, and claimed that he was actually innocent. He asserted that he had been at his home, awaiting the arrival of the EMS employees at the relevant times and that they failed to appear. The petitioner did not provide any evidence to the court, other than his testimony, that he was actually innocent of the charges. The court, in its memorandum of decision, disposed of the petitioner's actual innocence claim in a footnote, which states: "The court at this juncture acknowledges that the petitioner also claims that he is actually innocent of the violation of probation charge. The petitioner has not, however, presented any evidence remotely approaching the 'clear and convincing' standard enunciated in *Miller* v. *Commissioner of Correction*, 242 Conn. 745, 794, 700 A.2d 1108 (1997)."

In *Miller*, our Supreme Court held that "the proper standard for evaluating a freestanding claim of actual innocence . . . is twofold. First, the petitioner must establish by clear and convincing evidence that, taking into account all of the evidence—both the evidence adduced at the original criminal trial and the evidence adduced at the habeas corpus trial—he is actually innocent of the crime of which he stands convicted. Second, the petitioner must also establish that, after considering all of that evidence and the inferences drawn therefrom as the habeas court did, no reasonable fact finder would find the petitioner guilty of the crime." (Internal quotation marks omitted.) *Thompson* v. *Commissioner of Correction*, 91 Conn. App. 205, 220, 880 A.2d 965 (2005), appeal dismissed, 280 Conn. 509, 909 A.2d 946 (2006). The court's factual determinations are reviewed pursuant to the substantial evidence standard, whereas a review of its legal conclusion is plenary. *Miller* v. *Commissioner of Correction*, supra, 242 Conn. 803–805.[16]

---

[16] We note that a violation of probation need be established by a fair preponderance of the evidence; *State* v. *Davis*, 229 Conn. 285, 295, 641 A.2d

The petitioner's first two arguments assert that the court improperly applied the first prong of the *Miller* analysis. The petitioner argues that the court insufficiently considered the evidence at the violation of probation trial and his testimony before the habeas court. The court, however, clearly did consider the evidence presented at the violation of probation trial, as shown by its factual findings regarding that trial. If the petitioner desired the court to be more explicit, he could have requested an articulation. The petitioner's argument that the court did not sufficiently consider his testimony is really just a request that this court reevaluate the habeas court's determination that the petitioner's testimony was not credible. As an appellate court, we typically do not reevaluate the credibility of testimony; see *Payne* v. *Commissioner of Correction*, supra, 62 Conn. App. 586; and we decline to do so in this case. The petitioner also faults the court for not explicitly making a determination of the second prong of *Miller*, namely, the legal determination of whether a finder of fact would find him guilty. The petitioner does not provide any authority or analysis, however, demonstrating that the court must determine the second prong of *Miller* after having found that he has failed to satisfy the first. Because the petitioner must satisfy both prongs to prevail, we conclude that it was not improper for the court to omit an analysis of the second prong. We therefore conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal on this issue or any other issue in this case.

The appeal is dismissed.

In this opinion the other judges concurred.

370 (1994); whereas claims of actual innocence must be established by clear and convincing evidence, a higher standard of proof. No case has yet decided whether the principles as to the standard of proof of *Miller* v. *Commissioner of Correction*, supra, 242 Conn. 745, are applicable to a violation of probation hearing, which is not a criminal proceeding.