## GREGORY MCCLAM *v.* COMMISSIONER OF CORRECTION
### (AC 26704)

DiPentima, McLachlan and Peters, Js.

Argued September 11—officially released November 14, 2006

*Emmet P. Hibson, Jr.*, special public defender, for the appellant (petitioner).

*Kelly A. Masi*, assistant state's attorney, with whom were *Michael E. O'Hare*, supervisory assistant state's attorney, and, on the brief, *Michael Dearington*, state's attorney, and *David P. Gold*, former assistant state's attorney, for the appellee (respondent).

*Opinion*

DiPENTIMA, J. The petitioner, Gregory McClam, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court

denying his amended petition for a writ of habeas corpus. The petitioner claims that the court abused its discretion when it denied his petition for certification to appeal and improperly rejected his claims that his trial counsel rendered ineffective assistance. We dismiss the petitioner's appeal.

The relevant facts and procedural history are set forth in the decision rendered in the petitioner's direct appeal. "At approximately 11 p.m. on March 14, 1992, Dwight Binns, Damon Williams, his brother David Williams, Brian McCoy, Warren Murphy and his girlfriend were all at Tipton's nightclub in Stamford. At the nightclub, McCoy asked Murphy's girlfriend to dance. A fistfight ensued between McCoy's friends and Murphy's friends. The fight was stopped by club security, but started again. Eventually, the nightclub was closed and everyone was asked to leave.

"When Murphy returned to his car in the nightclub parking lot, he found the windows broken, the back door bent and a coat missing from the backseat. Murphy assumed that the damage had been inflicted by McCoy and his friends.

"Murphy drove to his house in North Haven and called Alan Walker. Walker, accompanied by the [petitioner] and Jimmy Dennis, drove to Murphy's house and observed the damage to Murphy's car. Murphy, Walker, the [petitioner] and Dennis all got into Walker's Honda Accord and drove toward West Haven in an effort to find McCoy and his friends and to finish the fight.

"McCoy, the Williams brothers, Binns and George Ortiz were in front of David Williams' home in West Haven when Murphy and his friends drove by in Walker's Honda Accord. The two groups stared at each other, but no words were exchanged.

"McCoy and his friends got into David Williams' Hyundai Excel. Binns was driving, McCoy was in the

passenger seat, and Ortiz, Damon and David Williams were in the backseat. Binns drove to a convenience store and gas station. Murphy and his friends were there buying gas. The [petitioner] got out of the Honda and overheard someone in the Hyundai refer to getting a gun ready. The [petitioner] relayed what he had heard to the occupants of the Honda. The [petitioner] and his friends left the gas station in the Honda and drove toward New Haven. The men in the Hyundai exited the gas station a few seconds later and followed the Honda. As the Hyundai passed the Honda on the left, one of the men in the backseat of the Hyundai pointed a rifle out of the right backseat window toward the Honda. When the Hyundai was two or three car lengths in front of the Honda, the [petitioner] rolled down the front passenger seat window, stuck a nine millimeter gun out of it and fired at least ten bullets at the back of the Hyundai.

"David Williams, who was sitting in the backseat of the Hyundai, was shot in the back. Binns drove directly to the hospital, where the victim was pronounced dead.

"After the shooting, Murphy and his friends in the Honda drove directly to Walker's girlfriend's apartment. From there, they all went home.

"At trial, Detective Bennie Smith of the New Haven police department testified that on March 15, 1992, at 4:28 a.m., he found eleven empty shell casings in the vicinity of the shooting. He further testified that ten of the casings were from a nine millimeter gun, and one casing was from a .38 caliber gun. Ira Kanfer, the pathologist who performed the autopsy on the victim, also testified at trial. Kanfer testified that the victim died from a gunshot wound. He explained that the bullet entered the victim's body through his back and traveled through his right lung into one of the larger vessels in the heart region, causing the victim to bleed to death."

*State* v. *McClam*, 44 Conn. App. 198, 200–202, 689 A.2d 475, cert. denied, 240 Conn. 912, 690 A.2d 400 (1997). A three judge panel found the petitioner guilty of murder in violation of General Statutes § 53a-54a and sentenced him to a total effective term of thirty-five years imprisonment. We affirmed his conviction on direct appeal. See id., 210.

Following his unsuccessful appeal, the petitioner filed an amended petition for a writ of habeas corpus.[1] In that petition, the petitioner claimed ineffective assistance of counsel, alleging that his trial counsel, William Tiernan, Jr., was ineffective in failing to raise a self-defense claim and to cross-examine a state's witness effectively concerning one of the shell casings found at the scene, and in filing a request for consideration of a lesser included offense that was inconsistent with the defense in the case. In his prayer for relief, the petitioner requested that his conviction be reversed and that his case be remanded to the trial court for a new trial.

The habeas court held a hearing on December 2, 2004, and again on March 15, 2005, during which the petitioner and Tiernan testified. In a memorandum of decision filed on March 17, 2005, the court found that the petitioner had failed to meet his burden of proof and denied the petition. Thereafter, the court denied the petition for certification to appeal from the denial of the petition for a writ of habeas corpus. This appeal followed.

The standard of review of a habeas court's denial of a petition for certification to appeal is well settled. "We examine the petitioner's underlying claim . . . to determine whether the habeas court abused its discretion in denying the petition for certification to appeal. . . . In a habeas appeal, this court cannot disturb the

---

[1] The initial petition was filed on June 30, 2003, and the final amended petition was filed on July 26, 2004.

underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . .

"In *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court enunciated the two requirements that must be met before a petitioner is entitled to reversal of a conviction due to ineffective assistance of counsel. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversarial process that renders the result unreliable. . . .

"The first component, generally referred to as the performance prong, requires that the petitioner show that counsel's representation fell below an objective standard of reasonableness." (Citations omitted; internal quotation marks omitted.) *Fernandez* v. *Commissioner of Correction*, 96 Conn. App. 251, 262–63, 900 A.2d 54, cert. denied, 280 Conn. 908, 907 A.2d 89 (2006).

With this standard in mind, we turn to the petitioner's claims on appeal. The petitioner raises several claims that boil down to a single dispositive issue, namely, whether his trial counsel's performance was deficient because he failed to disregard the petitioner's own strategic choice to deny that he was the shooter. Specifically, the petitioner claims that the habeas court improperly determined that his trial counsel provided effective assistance despite his failure to raise a self-defense claim or to cross-examine the state's witness concerning the .38 caliber shell casing found at the

scene of the crime and despite his request for consideration of a lesser included offense that was inconsistent with the defense in the case.[2]

The habeas court credited Tiernan's testimony that "he did not raise a self-defense claim because, based upon what his client told him, there was no self-defense issue raised in the case." The court further found that "[t]he petitioner denied being the shooter to his lawyer and in his sworn testimony at his trial. Given that approach, a claim of self-defense cannot possibly lie." The court therefore rejected the petitioner's claim of ineffective assistance of counsel and then denied his petition for certification to appeal. "The reasonableness of counsel's actions may be determined or substantially influenced by the [petitioner's] own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the [petitioner] and on information supplied by the [petitioner]." *Strickland* v. *Washington,* supra, 466 U.S. 691. By his own admission, the petitioner told his defense counsel that he was not the shooter and chose to maintain that position at trial. The petitioner's girlfriend corroborated his claim. Acting on that information, defense counsel elected not to assert a self-defense claim, as it would have been contrary to the factual scenario presented by the petitioner during his trial testimony.[3] That same logic applies equally to the petitioner's claim that Tiernan should have cross-examined the state's witness regarding the .38 caliber shell casing found at the scene

---

[2] We note that the habeas court did not explicitly address the petitioner's second and third claims. We may reasonably infer, however, that the court rejected those claims in denying the petition for a writ of habeas corpus. Neither the petitioner nor the state requested an articulation of the court's decision.

[3] At the habeas trial, the petitioner admitted that he in fact did fire the fatal gunshots.

of the crime. On the basis of the petitioner's own strategic choices, seeking further clarification about the particular shell casing through cross-examination would have been irrelevant.

Finally, the petitioner's claim that Tiernan filed a request for consideration of a lesser included offense that was inconsistent with the defense strategy is also without merit. Contrary to the petitioner's testimony, the state presented substantial evidence at trial that the petitioner was the shooter. On the basis of that evidence, defense counsel requested that a lesser included offense be considered in order to afford the petitioner a more favorable outcome should the court find the state's case more convincing. Accordingly, we conclude that the petitioner has failed to show that Tiernan's performance was deficient. Therefore, we need not address the prejudice prong of *Strickland*.

The petitioner must demonstrate that the court abused its discretion in denying his petition for certification to appeal. After thoroughly reviewing the record and briefs, as well as the court's resolution of the issues presented in the petition for a writ of habeas corpus, we are not persuaded that the issues raised in the petition for certification to appeal are debatable among jurists of reason, that a court could resolve those issues differently or that the questions raised deserve encouragement to proceed further. See *Simms* v. *Warden*, 230 Conn. 608, 616, 646 A.2d (1994), quoting *Lozada* v. *Deeds*, 498 U.S. 430, 432, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991). Consequently, the petitioner has failed to demonstrate that the court abused its discretion in denying his petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.