******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KENNETH JAMISON *v.* COMMISSIONER
OF CORRECTION
(AC 36971)

Lavine, Alvord and Sheldon, Js.

*Argued May 12—officially released August 2, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Oliver, J.)

*David J. Reich*, for the appellant (petitioner).

*Margaret Gaffney Radionovas*, senior assistant
state's attorney, with whom, on the brief, were *John
C. Smriga*, state's attorney, *Angela R. Macchiarulo*,
senior assistant state's attorney, and *Yamini Menon*,
special deputy assistant state's attorney, for the appel-
lee (respondent).

*Opinion*

ALVORD, J. Following a grant of certification to appeal by the habeas court, the petitioner, Kenneth Jamison, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court improperly concluded that he was not deprived of the effective assistance of trial counsel and appellate counsel. Specifically, he claims that the court erroneously determined that (1) "there was no prejudice in trial counsel's failure to properly challenge the introduction of a 'stick' which was used by the state to prove the element of a deadly weapon at the criminal trial," and (2) "appellate counsel was ineffective for failing to challenge the sufficiency of the 'stick.' " We affirm the judgment of the habeas court.

The record reveals the following relevant facts and procedural history. Following a 1996 jury trial, the petitioner was convicted of assault in the second degree by means of a deadly weapon in violation of General Statutes § 53a-60 (a) (2).[1] The jury returned not guilty verdicts with respect to the charges of criminal possession of a firearm in violation of General Statutes § 53a-217 (a), and carrying a pistol without a permit in violation of General Statutes § 29-35 (a). The petitioner was sentenced to five years incarceration, to run consecutively to a sentence that he was then serving for other nonrelated convictions. Following a direct appeal, the judgment of conviction was affirmed by this court. *State* v. *Jamison*, 56 Conn. App. 223, 742 A.2d 1272 (1999).

The opinion of this court set forth the following facts that the jury reasonably could have found. "On September 21, 1995, Hashim Preston was in his sister's apartment in Bridgeport. Shortly after midnight, Maria Caban knocked on the door of the apartment and was let in by Preston. While the door was open, the [petitioner] forced his way into the apartment and engaged Preston in a hostile conversation about certain money matters. At some point,[2] the [petitioner] pulled out a long black stick that had tape and a cable wire around it, and struck Preston in the face with it five to seven times.

"On October 12, 1995, several police officers executed a search and seizure warrant at 400 Wood Avenue. The [petitioner] was present, but told the officers that he was a visitor to the premises. The officers seized a gun that belonged to the [petitioner], ammunition and an identification card that contained the [petitioner's] picture and the name 'Johnny Vincent.'

"On the basis of Preston's identification, the [petitioner] was arrested and a trial followed. At the close of the state's case, the [petitioner] moved for a judgment of acquittal on the grounds that a state's witness gave conflicting versions of the incident, the police investigation was inadequate, and the search and seizure warrant

was defective. He did not claim that the evidence was insufficient to support a guilty verdict. The trial court denied the motion, and the jury returned a verdict of not guilty on the counts of the information that alleged criminal possession of a firearm . . . and carrying a pistol without a permit . . . . The jury found the [petitioner] guilty of assault in the second degree . . . ." (Footnotes omitted.) Id., 224–26. The petitioner's counsel during the criminal trial was Attorney Jason Gladstone.

On direct appeal to this court, the petitioner, represented by Attorney Vicki H. Hutchinson, challenged the sufficiency of the evidence for the conviction on the basis of the following argument: "Preston gave the only evidence of the assault, testifying that the [petitioner] struck him with a gun, and the evidence showed that the same gun was found three weeks later in an apartment occupied by the [petitioner]. By finding the [petitioner] not guilty of criminal possession of a firearm and carrying a pistol without a permit, the jury demonstrated that it did not believe Preston's testimony that he was struck with a gun. Although Preston testified that the [petitioner] also struck him with the stick that was wrapped with tape and cable wire, it is inconceivable that the jury believed Preston's testimony. The [petitioner] further asserts that [t]he only conclusion which can be drawn from the verdicts is that the jury convicted [the petitioner] based on his prior conviction of manslaughter. . . . Prior conviction of manslaughter is not sufficient to convict an individual of assault in the second degree." (Internal quotation marks omitted.) Id., 226. Because the petitioner's claims on direct appeal had not been raised in the trial court, this court concluded that they were not reviewable and affirmed the judgment of the trial court. Id. 227–28.

Following his unsuccessful appeal, the self-represented petitioner filed a habeas petition on May 1, 2012. On January 15, 2014, now represented by habeas counsel, the petitioner filed a three count amended petition for a writ of habeas corpus. In count one of his amended petition, the petitioner claimed, inter alia, that his trial counsel rendered ineffective assistance by failing to argue to the jury that the stick did not fall within the statutory definition of a deadly weapon, by failing to object to the trial court's instruction that allowed the jury to consider the stick to be a deadly weapon, and by failing to object to the court's "expanded definition" of a deadly weapon after the jury requested a definition of that term. In count two of his amended petition, the petitioner claimed, inter alia, that his appellate counsel rendered ineffective assistance by failing to raise the issue that "the evidence was insufficient for the court to find that a gun was used in the assault and that the stick met the statutory definition of a [deadly] weapon." In count three of his amended petition, the petitioner alleged prosecutorial impropriety, claiming that the

state misled the jury by introducing the stick as a deadly weapon.

The respondent, the Commissioner of Correction, filed his return on March 26, 2014. With respect to count three of the amended petition, the respondent alleged that the petitioner was procedurally defaulted because he had failed to raise the claim of prosecutorial impropriety before the trial court or on direct appeal. In the petitioner's reply filed March 31, 2014, he claimed that he was not procedurally defaulted because he could demonstrate cause and prejudice.

On May 27, 2014, the court held a trial on the petitioner's amended petition for a writ of habeas corpus. In addition to the submission of various exhibits, the petitioner testified and called Gladstone, Hutchinson and Richard Palombo, a senior assistant state's attorney, as his witnesses. The court issued its memorandum of decision on June 9, 2014, in which it made the following determinations: (1) the petitioner acknowledged at the habeas trial that the state had claimed at his criminal trial that he assaulted Preston with a stick and a gun; (2) during the habeas trial, the petitioner recognized the stick, submitted as an exhibit, as the object entered into evidence at his criminal trial and identified as the dog's toy;[3] (3) Gladstone did not object to the introduction of the stick into evidence at the criminal trial; (4) Gladstone testified at the habeas trial that he did not believe an objection to the introduction of the stick into evidence would have been successful because it had been properly authenticated; (5) the court was "not persuaded" that Gladstone's failure to object to the introduction of the stick into evidence constituted ineffective assistance because there was no indication in the trial court record that the stick was inadmissible at the criminal trial; (6) regardless of whether any of Gladstone's claimed errors rose to the level of deficient performance, the petitioner's claim of ineffective assistance failed because there was no showing of any resulting prejudice; (7) the state had a strong case against the petitioner, who was charged with committing the assault with either a gun or the stick; (8) whether Preston was pistol whipped, beaten with the stick, or both, there was ample evidence in the criminal trial court record to support his conviction; (9) a reasonable juror could have found the stick to be a deadly weapon on the basis of the statutory definition and the criminal trial court record; (10) the petitioner failed to demonstrate that, but for any of Gladstone's alleged errors, there was a reasonable probability that the outcome of his criminal trial would have been different; (11) Hutchinson did not challenge on direct appeal whether the evidence would allow a jury to find the stick to be a deadly weapon; (12) Hutchinson was "not sure" any such challenge would have been successful because the jury was the ultimate fact finder; (13) Hutchinson's selection of the issues for appeal was a

"clear strategic decision;" (14) Hutchinson's failure to argue the sufficiency of the evidence as to the stick in the petitioner's direct appeal was not deficient performance, but, rather, reflected a decision to narrow the appellate issues to those most likely to succeed; and (15) the petitioner submitted no credible evidence of any good cause that would justify his failure to raise the issue of prosecutorial impropriety at the criminal trial or on direct appeal. For those reasons, the habeas court dismissed the third count of the petitioner's amended petition alleging prosecutorial impropriety on the ground of procedural default,[4] and denied the remainder of the petitioner's claims on the merits. This appeal followed.

The standard of review in habeas appeals is well settled. "In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . .

"In *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court enunciated the two requirements that must be met before a petitioner is entitled to reversal of a conviction due to ineffective assistance of counsel. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversarial process that renders the result unreliable." (Internal quotation marks omitted.) *McClam* v. *Commissioner of Correction*, 98 Conn. App. 432, 435–36, 909 A.2d 72 (2006), cert. denied, 281 Conn. 907, 916 A.2d 49 (2007). "Because the petitioner must satisfy both prongs of the *Strickland* test to prevail on a habeas corpus petition, this court may dispose of the petitioner's claim if he fails to meet either prong." (Internal quotation marks omitted.) *Moore* v. *Commissioner of Correction*, 119 Conn. App. 530, 535, 988 A.2d 881, cert. denied, 296 Conn. 902, 991 A.2d 1103 (2010).

"In regard to the second prong, our Supreme Court distinguished the standards of review for claims of ineffective trial counsel and ineffective appellate counsel. *Small* v. *Commissioner of Correction*, 286 Conn. 707, 721–24, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008). For claims of ineffective appellate counsel, the second prong considers whether there is a reasonable probability that, but for appellate counsel's failure to raise the issue on appeal, the petitioner would have prevailed in his direct appeal, i.e., reversal of his conviction or granting of a new trial. Id., 722. This requires the

reviewing court to [analyze] the merits of the underlying claimed error in accordance with the appropriate appellate standard for measuring harm." (Internal quotation marks omitted.) *Moore* v. *Commissioner of Correction*, supra, 119 Conn. App. 535.

## I

We first consider the petitioner's claim that the habeas court improperly determined that he failed to demonstrate any resulting prejudice with respect to Gladstone's alleged deficient performance in failing to challenge the stick that was used by the state to prove the element of a deadly weapon at the criminal trial. The gravamen of the petitioner's claim is that the stick in this case was not a deadly weapon as a matter of law, and, accordingly, that Gladstone rendered ineffective assistance by failing to (1) object to its admission into evidence, (2) argue to the jury that it did not meet the statutory definition of a deadly weapon, (3) request a jury instruction as to whether the stick constituted a deadly weapon, and (4) object to the criminal court's "expanded definition" of the term "deadly weapon" in response to a jury question.

The habeas court expressly rejected the petitioner's argument that the stick did not constitute a deadly weapon as a matter of law. In its memorandum of decision, the court first made the following observations about the stick. "This court, based on visual examination, finds the stick in question to be an object approximately two feet long. The object appears to have at its foundation a thin metal rod with a curved end at its final four inches. The longer two-thirds of the rod are covered with what appears to be hardened insulating spray foam. The end of the rod appears to be heavily wrapped in black electrical tape in the shape of a ball to prevent its slipping from the grip of its holder. There is an exposed area of the metal rod which this court finds fits a human hand well. The major portion of the object is wrapped in black electrical tape. The curved portion of the stick is augmented with coaxial cable and wrapped with additional electrical tape. The petitioner testified at the habeas trial that the stick was augmented at the end with the coaxial cable 'to keep the dog from biting through.' There is approximately two feet of exposed coaxial cable wrapped around the stick with the metal end of the coaxial cable still attached."

In reviewing the petitioner's claims, the court stated: "[T]his court will not accept the petitioner's invitation to usurp the fact-finding function of the jury by attempting to assert, as a matter of law, that the stick is not a deadly weapon. This court does find that a reasonable juror could have found the stick to be a deadly weapon based on the statutory definition and the trial record. Given the evidence before the jury in this case, including the stick as previously described in this opinion by the court, the court finds that the

petitioner failed to show any resulting prejudice from defense counsel's [alleged deficient performance] . . . ." (Internal quotation marks omitted.) We agree with the habeas court.

The petitioner was convicted of assault in the second degree by means of a deadly weapon in violation of § 53a-60 (a) (2). Section 53a-60 (a) provides in relevant part: "A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument[5] other than by means of the discharge of a firearm . . . ." The term deadly weapon is defined in General Statutes § 53a-3 (6) as "any weapon, whether loaded or unloaded, from which a shot may be discharged, or a switchblade knife, gravity knife, billy, blackjack, bludgeon, or metal knuckles. . . ." The petitioner argues that the stick could not, as a matter of law, be considered a deadly weapon because it did not fit within the category of a bludgeon. The petitioner claims that a bludgeon, by dictionary definition, must be heavy, and the stick in this case was too light in weight to be a bludgeon.

Because the term bludgeon is not statutorily defined, the jury would be expected to apply the common and ordinary meaning of the word in determining whether the stick was a bludgeon. "The rule [is] that terms in a statute are to be assigned their ordinary meaning, unless context dictates otherwise . . . ." (Internal quotation marks omitted.) *State* v. *Woods*, 234 Conn. 301, 309, 662 A.2d 732 (1995); see also *State* v. *Kalil*, 314 Conn. 529, 558, 107 A.3d 343 (2014). We acknowledge that one definition of bludgeon, as found in various dictionaries, does include the adjective "heavy" or "weighted" in the description of the item.[6] Nevertheless, we note that not all dictionary definitions of bludgeon describe a bludgeon as being heavy. It may be a short stick with one thick or loaded end.[7] Moreover, synonyms for bludgeon routinely include the words bat, club, stick and truncheon.[8] There is not one commonly used meaning for the term bludgeon. Many words have varying shades of meaning, depending on the context in which they are used, and the term bludgeon reasonably could be described as some sort of club or stick that is used to inflict harm. Heaviness may, but would not necessarily, be one factor to consider.

The habeas court described the stick in this case as follows: "The end of the rod appears to be heavily wrapped in black electrical tape in the shape of a ball to prevent its slipping from the grip of its holder." A jury reasonably could have found that the stick, submitted as an exhibit and as described by the habeas court, fell within the common and ordinary meaning of bludgeon, as just described.[9] "Our Supreme Court has noted that [a] dictionary is nothing more than a compendium of

the various meanings and senses in which words have been and are used in our language. A dictionary does not define the words listed in it in the sense of stating what the words mean universally. Rather, it sets out the range of meanings that may apply to those words as they are used in the English language, depending on the various contexts of those uses. . . . As Justice Thurgood Marshall so aptly put it: Condemned to the use of words, we can never expect mathematical certainty from our language. . . . Thus, any word in the English language—except for words of specialized contexts, such as mathematics or science—will ordinarily have multiple meanings, depending on the context in which it has been used." (Citation omitted; internal quotation marks omitted.) *State* v. *Ruocco*, 151 Conn. App. 732, 752–53, 95 A.3d 573 (2014).

We decline the petitioner's invitation to select the most restrictive definition of the word bludgeon, or to usurp the fact-finding function of the jury by imposing a requirement that the stick be heavy. Accordingly, we are not persuaded by the petitioner's argument that the stick in this case, as a matter of law, could not be a bludgeon simply because it was lightweight.[10]

Moreover, it is of critical importance that both a gun and the stick were argued by the state as qualifying as deadly weapons for a conviction of assault in the second degree.[11] As found by the habeas court, and as supported by the record in the petitioner's criminal trial, the state presented sufficient evidence to permit the jury to find that the petitioner hit Preston twice on the head with a gun and repeatedly in the face with the stick. Under those circumstances, the jury reasonably could have found that the petitioner used the gun as a bludgeon[12] or used the stick as a bludgeon or used both the gun and the stick as bludgeons.

It is the petitioner's position that "it is likely that the jury did not find that the petitioner used a firearm in the assault, but did use the stick in the assault, and further that the jury found that the stick was a deadly weapon." He supports that claim with the argument that "[u]ltimately, the jury acquitted the petitioner of the two gun counts" and "the discrepancy between Preston's and Caban's testimony[13] regarding the presence of the gun . . . ." In essence, the petitioner is claiming that it would be inconsistent for the jury to have determined that the petitioner assaulted Preston with a gun when it found him not guilty of the charges pertaining to firearms and that Preston's testimony was not credible.[14] We are not persuaded.

Claims of inconsistent verdicts between a conviction and an acquittal are not reviewable on appeal, regardless of whether the claims are of factual inconsistency, legal inconsistency or logical inconsistency. *State* v. *Arroyo*, 292 Conn. 558, 581–85, 973 A.2d 1254 (2009), cert. denied, 559 U.S. 911, 130 S. Ct. 1296, 175 L. Ed.

2d 1086 (2010).[15] Accordingly, even if we were to consider the verdicts as inconsistent, we would not find error unless the conviction of assault in the second degree was not supported by sufficient evidence. Id., 581. In the present case, the jury heard testimony that the petitioner struck Preston in the head and face with both a gun and the stick. The habeas court correctly determined that there was sufficient evidence to support his conviction. We conclude, on the basis of the foregoing discussion, that the court properly determined that the petitioner failed to show any resulting prejudice from Gladstone's alleged deficient performance.

II

The petitioner's next claim is that the habeas court improperly concluded that Hutchinson, his appellate counsel, rendered ineffective assistance by "failing to challenge the sufficiency of the 'stick.' " Specifically, the petitioner argues that Hutchinson' failure to "challeng[e] the sufficiency of the evidence of a deadly weapon" was deficient performance, and that the habeas court improperly concluded that her failure to do so was a strategic decision to narrow the issues on appeal to those most likely to succeed. The petitioner, in support of this claim, refers to Hutchinson's testimony at the habeas trial that she had not seen or handled the stick prior to the habeas trial.

We agree that Hutchinson's failure to review the exhibits for the petitioner's direct appeal, under the circumstances of this case, constituted deficient performance when the state claimed that the stick used to assault the petitioner was a deadly weapon. It is difficult to see how appellate counsel could have made a strategic decision not to challenge the stick as a deadly weapon when she had never seen the stick prior to filing the appeal or at any time thereafter until she testified at the habeas trial. Strategic decisions require adequate knowledge and information.[16]

Nevertheless, the petitioner's claim of ineffective assistance of appellate counsel fails because there was no showing that that he was prejudiced by Hutchinson's deficient performance. See *McClam* v. *Commissioner of Correction*, supra, 98 Conn. App. 436. For all of the reasons previously discussed, there is no reasonable probability that, but for Hutchinson's failure to challenge the stick as a deadly weapon, the petitioner would have prevailed in his direct appeal to obtain a reversal of his conviction or the granting of a new trial. See *Moore* v. *Commissioner of Correction*, supra, 119 Conn. App. 535. There was sufficient evidence presented at the criminal trial to support the petitioner's conviction of assault in the second degree with a deadly weapon. The jury could have reached its verdict on the basis of the gun or the stick or both weapons being used to strike Preston's head and face. The jury reasonably

could have found the stick in this case to be a deadly weapon. Any alleged inconsistencies in the verdict of guilty of assault in the second degree and the verdicts of not guilty as to the firearm charges, whether factual, legal or logical, are not reviewable. See *State* v. *Arroyo*, supra, 292 Conn. 581–85. We therefore agree with the habeas court that the petitioner failed to prove his claim of ineffective assistance of appellate counsel.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although the legislature has amended § 53a-60 (a) since 1995; see, e.g., Public Acts 2014, No. 14-220, § 1; those amendments do not affect subsection (a) (2) and have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[2] At the criminal trial, Preston testified that the petitioner first struck him twice on the head with a gun that he had brought into the apartment.

[3] The petitioner testified as to how the stick had been constructed with a plastic curtain rod, spray foam, black tape and a cord. He testified that the purpose for its construction was to create a dog toy for his young son to use when playing with the neighbor's dog. According to the petitioner, the cord was wrapped around the stick to prevent the dog from biting the stick. The petitioner described the neighbor's dog as a "little Chihuahua," but the respondent objected to that particular testimony about the dog's breed as being irrelevant, and the court sustained the respondent's objection.

[4] The petitioner does not challenge the habeas court's dismissal of the third count of his amended petition in this appeal.

[5] The first count of the information, which charged the petitioner with assault in the second degree, alleged that the petitioner "with intent to cause physical injury to Hashim Preston caused such injury to Hashim Preston by means of a deadly weapon in violation of Section 53a-60 (a) (2) of the Connecticut General Statutes which provides as follows: A person is guilty of assault in the second degree when with intent to cause physical injury to another person, he causes such injury to such person by means of a deadly weapon."

In the trial court's instructions to the jury, it charged: "For you to find the defendant guilty of this charge [of assault in the second degree], the state must prove the following elements beyond a reasonable doubt: that the [petitioner] intended to physically injure another person, that the [petitioner] caused such physical injury to his intended victim and that the [petitioner] used a deadly weapon in causing such injury." The court then provided the statutory definition of a deadly weapon. There was no mention in the information or the court's charge of the stick being considered a dangerous instrument for purposes of the alleged assault, and the court did not provide the statutory definition of a dangerous instrument in its instructions to the jury.

[6] See, e.g., http://www.dictionary.com/browse/bludgeon (last visited July 22, 2016).

[7] The noun "bludgeon" is defined as "a short stick that usu[ally] has one thick or loaded end and is used as a weapon." Merriam-Webster's Collegiate Dictionary (11th Ed. 2005).

[8] See http://www.thesaurus.com/browse/bludgeon (last visited July 22, 2016), and http://www.oxforddictionaries.com/us/definition/english-thesaurus/bludgeon (last visited July 22, 2016). According to Wikipedia, a popular encyclopedia website, which is accessible to the public free of charge and updated collaboratively by the site's visitors, a club is also known as a cudgel, baton, truncheon, cosh, nightstick, or bludgeon. See https://en.wikipedia.org/wiki/Club_(weapon) (last visited July 22, 2016).

[9] The petitioner's additional claim that the trial court expanded the definition of a deadly weapon, in response to a question from the jury, likewise is not persuasive. The petitioner challenges the court's statement that a deadly weapon "in general terms means some kind of a club." The court prefaced that statement by instructing the jury to "use your common sense definitions or everyday definition" to define the terms billy, blackjack or bludgeon. The petitioner provides no analysis as to why the court's definition somehow expanded its original instruction. This claim is inadequately briefed, and we decline to address it. See *Braham* v. *Newbould*, 160 Conn. App. 294, 312 n.15, 124 A.3d 977 (2015).

[10] The petitioner appears to challenge the extent of Preston's injuries from being struck with the "lightweight" stick, stating that he "refused medical treatment." At the criminal trial, however, Caban and officers who responded to the incident described Preston's injuries in the following terms: "I noticed that he had cuts and bruises on his face"; "[H]e had facial injuries"; "He was injured, there was no doubt about it"; "He was lumped up. He had— he looked like he got beat up"; "His face was swollen and he was crying"; and "[I saw cuts] over his eyes. His eyes. . . . And on his face, his forehead, his eyes. He was beaten up pretty good."

[11] During the closing argument before the jury, the state's attorney argued: "The Judge is going to instruct you on what a deadly weapon is and within that instruction . . . without interfering in his province of instructing you upon the law, I would submit to you after he instructs you on the what a deadly weapon is that both of these items, state's 1, the pistol, and 3, for a lack of a better term, the stick, is going to qualify as a deadly weapon, so I ask you please to listen to his instructions on the law and as to deadly weapon." He further argued, in summarizing the state's evidence, that the petitioner "did cause physical injury by means of a deadly weapon, either the handgun or the stick. And Hashim Preston, if you remember, indicated that he was struck in the back of the head with the handgun."

[12] Case law supports the proposition that a gun may be used as a bludgeon. For example, in *State* v. *Mercer*, 29 Conn. App. 679, 682, 617 A.2d 916 (1992), cert. denied, 225 Conn. 902, 621 A.2d 285 (1993), a pistol was not employed for its designed purpose of firing a bullet, but, rather, was "used as a bludgeon" to strike the victim. In *State* v. *Ovechka*, 292 Conn. 533, 544, 975 A.2d 1 (2009), our Supreme Court found persuasive the decision of a Maryland appellate court that concluded an unloaded gun or starter's pistol was "useable as a bludgeon." (Internal quotation marks omitted.) Further, in *State* v. *Manley*, 195 Conn. 567, 576 n.9, 489 A.2d 1024 (1985), our Supreme Court noted: "The state did not try this case on the theory that the 'deadly weapon' involved here was the gun used as a 'bludgeon.' See Perkins, Criminal law (2d Ed. 1969), p. 131 ('A firearm might be used as a club whether loaded or unloaded') . . . ."

[13] At the criminal trial, Caban testified that she did not see the actual attack or a gun.

[14] Credibility is clearly a matter for the jury; we do not make credibility determinations or second guess the jury. See *McClean* v. *Commissioner of Correction*, 103 Conn. App. 254, 263, 930 A.2d 693 (2007), cert. denied, 285 Conn. 913, 943 A.2d 473 (2008). This argument merits no further discussion.

[15] The rationale for this rule is as follows: "The United States Supreme Court rejected this claim [in *United States* v. *Powell*, 469 U.S. 57, 65–66, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984)]. The court reasoned that inconsistent verdicts . . . should not necessarily be interpreted as a windfall to the [g]overnment at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense. But in such situations the [g]overnment has no recourse if it wishes to correct the jury's error; the [g]overnment is precluded from appealing or otherwise upsetting such an acquittal by the [c]onstitution's [d]ouble [j]eopardy [c]lause. . . . The fact that the inconsistency may be the result of lenity, coupled with the [g]overnment's inability to invoke review, suggests that inconsistent verdicts should not be reviewable." (Citation omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Arroyo*, supra, 292 Conn. 585. "[A] criminal defendant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts." (Internal quotation marks omitted.) Id.

[16] "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland* v. *Washington*, supra, 466 U.S. 690–91.

At the habeas trial, when asked if she had viewed the exhibits in this case, Hutchinson responded with the testimony that she did not recall ever viewing the exhibits for an appeal. She admitted that she had not challenged

the stick as a deadly weapon in the appeal, but stated that she might have reasoned that the jury was the ultimate fact finder.

––––––––––––––––––––––––––––––––